**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| WELSPUN USA, INC., WELSPUN  GLOBAL BRANDS LIMITED, and WELSPUN INDIA LIMITED, <br><br>        Plaintiffs, <br><br>   v. <br><br> EKE TEKSTIL KONFEKSIYON TURIZM SANAYI VE TICARET A.S., <br><br>        Defendant. | Civil Action No.:  1:16-cv-12040-LTS |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS THE COMPLAINT OR TRANSFER**

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     RELEVANT FACTUAL BACKGROUND .................................................................. 2

    A.      Welspun and Its HYGROCOTTON Products ......................................................... 3

    B.      Eke, Its Sale of HYDROCOTTON Products to Massachusetts Consumers,
        and Its Website ........................................................................................... 5

III.    ARGUMENT .................................................................................................... 8

    A.      Welspun Has Made a *Prima Facie* Showing of Specific Personal
        Jurisdiction .................................................................................................. 8

        1.      Relatedness ....................................................................................... 9

        2.      Purposeful Availment .......................................................................... 11

        3.      Reasonableness ................................................................................. 15

    B.      Venue is Proper in this Court ............................................................................ 18

        1.      Eke's Motion to Dismiss under Fed. R. Civ. P. 12(b)(3) Must Be
        Denied ............................................................................................. 18

    C.      Eke's Motion to Transfer Must Be Denied ........................................................... 19

IV.     CONCLUSION ................................................................................................ 21

## TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*Adelson v. Hananel,*
    510 F.3d 43 (1st Cir. 2007)......................................................................................8, 15

*Astro-Med, Inc. v. Nihon Kohden America, Inc.,*
    591 F.3d 1(1st Cir. 2009)......................................................................................18, 19

*Art Technology Group, Inc. v. Puritan's Pride, Inc.,*
    716 F. Supp. 2d 93 (D. Mass. 2010) ...................................................................15, 16

*Berklee Coll. of Music, Inc. v. Music Indus. Educators, Inc.,*
    733 F. Supp. 2d 204 (D. Mass. 2010) ......................................................................17

*Blu Homes, Inc. v. Kaufmann,*
    No. 10-cv-11418-DJC, 2011 WL 3290362 (D. Mass. July 29, 2011)....................16

*Brookfield Mach., Inc. v. Calbrit Design,*
    929 F. Supp. 491 (D. Mass. 1996) .......................................................................1, 19

*C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.,*
    771 F.3d 59 (1st Cir. 2014)....................................................................................9, 10

*Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. &*
*Co. Kg.,*
    295 F.3d 59 (1st Cir. 2002)....................................................................................15, 16

*Codex Corp. v. Milgo Elec. Corp.,*
    553 F.2d 735 (1st Cir. 1977), *cert. denied,* 434 U.S. 860 (1977) ...........................19

*Copia Communications, LLC v. AMResorts, L.P.,*
    812 F.3d 1 (1st Cir. 2016)...........................................................................................9

*Edvisors Network, Inc. v. Educational Advisors, Inc.,*
    755 F. Supp. 2d 272 (D. Mass. 2010) .........................................................8, 12, 16

*Fallon Luminous Prods. Corp. v. Multi Media Elecs., Inc.,*
    343 F. Supp. 2d 502 (D.S.C. 2004).........................................................................13

*Frito–Lay North America, Inc. v. Medallion Foods, Inc.,*
    867 F.Supp.2d 859 (E.D. Tex. 2012).......................................................................13

*Furminator, Inc. v. Wahba,*
    2011 WL 3847390 (E.D. Mo. Aug. 29, 2011).........................................................13

*Gary Scott Int'l, Inc. v. Baroudi*,
  981 F. Supp. 714 (D. Mass. 1997) .........................................................................18

*Goya Foods Inc. v. Oy*,
  959 F. Supp. 2d 206 (D.P.R. 2013).......................................................................18

*Hasbro, Inc. v. Clue Computing, Inc.*,
  994 F. Supp. 34 (D. Mass. 1997) ....................................................................17, 20

*Hilsinger Co. v. FBW Investments, LLC*,
  109 F. Supp. 3d 409 (D. Mass. 2015) ................................................11, 12, 13, 14

*Kernius v. International Electronics*,
  433 F. Supp. 2d 621 (D. Md. 2006) .....................................................................13

*Morphotrust USA, LLC v. Identrix, LLC*,
  No. 16-cv-10074, 2016 WL 3512131 (D. Mass. Jun. 21, 2016) ...........................17

*Phillips v. Prairie Eye Ctr.*,
  530 F.3d 22 (1st Cir. 2008)...................................................................................10

*Rimowa Distribution Inc. v. Travelers Club Luggage Inc.*,
  No. 15-10330-RGS, 2015 WL 3454724 (D. Mass. May 29, 2015).......................10, 11, 12, 16

*Sawtelle v. Farrell*,
  70 F.3d 1381 (1st Cir. 1995)....................................................................8, 16, 17

**Statutes**

28 U.S.C. § 1391...................................................................................................18, 19

28 U.S.C. § 1404(a) ....................................................................................................19

Mass. Gen. Laws ch. 223A, § 3 .....................................................................................9

## I.      INTRODUCTION

Despite claims to the contrary in Plaintiff Eke Tekstil Konfeksioyon Turizm Sanayi ve Ticaret's ("Eke") motion to dismiss,[1] there can be no dispute that Eke's infringing HYDROCOTTON products are available for sale in Massachusetts.  Welspun has identified hundreds, if not thousands, of HYDROCOTTON-branded products currently being offered for sale in Massachusetts brick-and-mortar retail stores and online to Massachusetts customers. These products are being sold at nationwide retailer outlets, such as Pottery Barn, Nordstrom, Nordstrom Rack, Land's End (sold inside Sears), and Bloomingdales.  Promotion and sale of Eke's products under the infringing HYDROCOTTON mark has caused and continues to cause Welspun to suffer harm in this forum, giving rise to Welspun's trademark infringement and unfair competition claims.  Notably, while it claims to have never sold or shipped products into Massachusetts, Eke's Motion and Declarations are devoid of any representation that Eke did not know and/or approve of its HYDROCOTTON products being sold in this forum.  Based on the available facts, Welspun has made a *prima facie* showing of specific personal jurisdiction over Eke and established that Massachusetts is an appropriate venue for this action.

Eke's alleges that Welspun is forum-shopping  to convince this Court to transfer this case to its preferred jurisdiction—the Southern District of New York.  Plaintiffs, however, are given significant leeway to file actions in their forum of choice and Welspun's decision to file in Massachusetts must be given "great weight."  *Brookfield Mach., Inc. v. Calbrit Design,* 929 F. Supp. 491, 501 (D. Mass. 1996) (quoting *Home Owners Funding Corp. of America v. Century Bank,* 695 F. Supp. 1343, 1347 (D. Mass. 1988)).  Like Eke, Welspun sells its

---

[1]  After accepting service, the parties filed a stipulation with this court that Eke's Answer was due on or before February 16, 2017.  (Dkt. No. 10).  Eke did not file its Answer on February 16 nor did it file a request for an extension.  Eke filed its motion to dismiss on February 22, 2017, six days after its Answer was due.  (Dkt. No. 19.)

HYGROCOTTON products to national retailers including Bed Bath & Beyond, Costco, Home Depot, Macy's, and Walmart, which have <u>more than 90 brick-and-mortar stores in Massachusetts</u>.  Welspun's business is based in India and key decisions regarding use of the HYGROCOTTON mark and sales, marketing, and importation of HYGROCOTTON-branded products are all made in India.  As such, most if not all of the witnesses and relevant documents for this litigation are located in India—not in New York or anywhere in the United States.

Eke is located in Turkey and all indications suggest that its witnesses and relevant documents on manufacturing, branding, and use of the HYDROCOTTON mark will be found in Turkey.  Other than the presence of its non-party subsidiary, Eke USA, who Eke can obtain documents from, and two tangentially relevant non-parties, Eke has no ties to New York.  At best, Eke has proven that Massachusetts and New York would be equally convenient forums, falling far below the high burden of proof to warrant a transfer.

## II.   RELEVANT FACTUAL BACKGROUND

This is a trademark infringement and unfair competition case where Welspun alleges that Eke's use of the trademark HYDROCOTTON for bed and bath linens violates Welspun's rights in the mark HYGROCOTTON for bed sheets and towels (for which Welspun owns an incontestable federal trademark registration).  Indeed, a cursory Internet search shows how the marketplace is interchanging the HYGROCOTTON and HYDROCOTTON marks in a confusing manner:



(Declaration of Kristin M. Creed ("Creed Decl."), ¶ 16.)

### A.      Welspun and Its HYGROCOTTON Products

Welspun is one of the largest textile companies in the world and is a major global manufacturer and supplier of home textiles, including but not limited to bed and bath linens. (Declaration of Deepak Chauhan ("Chauhan Decl."), ¶ 3.)  U.S. sales of Welspun products totaled $176.1 million in 2015 and $189.9 million in 2016.  (*Id*.)  Approximately 1 in 5 of all towels sold in the U.S. is a Welspun-manufactured towel.  (*Id*.)  As a result of these extensive sales and marketing efforts in the United States, Welspun has been ranked No. 1 in "Top 15 Home Textile Supplier Giants to USA" by Home Textiles & Today Magazine for four consecutive years.  (*Id*.)

One of Welspun's core brands is HYGROCOTTON, with products including bed sheets, towels, rugs and comforters.  (*Id*. at ¶ 4.)  For more than ten years, Welspun has been advertising, promoting, selling, and distributing its HYGROCOTTON products in interstate and international commerce, including in the Commonwealth of Massachusetts.  (*Id*. at ¶ 5.)  In the past two years, Welspun undertook a highly-successful nationwide media campaign for its HYGROCOTTON

products.  (*Id.*)  This has resulted in HYGROCOTTON product sales in the tens of millions of

dollars in the U.S., including significant sales in Massachusetts.  (*Id.*)  By virtue of this extensive

advertising and substantial sales, the HYGROCOTTON brand has become well and favorably

known among U.S. consumers, including among Massachusetts residents.  (*Id.* at ¶ 6.)

Consumers in Massachusetts can purchase HYGROCOTTON-branded products directly

from Welspun's website—https://www.shopwelspun.com/brands/hygro-cotton.html.  (*Id.* at ¶ 8.)

Welspun also has a wide spectrum of nationwide retail partners selling its HYGROCOTTON-

branded products, including Bed Bath & Beyond, Costco, Home Depot, Macy's, and Walmart.

(*Id.* at ¶ 9.)  In addition to the online sales from these retailers to Massachusetts customers, these

retailers have more than 90 brick-and-mortar store locations in Massachusetts.  (*Id.*)

Welspun Global Brands Limited ("WGBL") and Welspun India Limited ("WIL") are

Indian corporations with their primary places of business in Mumbai, India.  (*Id.* at ¶ 2.)

Welspun USA, Inc. is a Delaware corporation with its principal place of business in New York.

(*Id.*)  Welspun USA is a wholly owned subsidiary of WGBL and WIL and functions as

Welspun's U.S. distribution arm.  (*Id.* at ¶¶ 2, 10.)  However, key decisions regarding use of the

HYGROCOTTON mark and sales, marketing, and importation of HYGROCOTTON-branded

products are made by personnel at WGBL and WIL in India.  (*Id.* at ¶ 10.)  As such, most if not

all of the relevant witnesses and documents for this litigation are located in India.  (*Id.*)

Apart from Welspun USA's location in New York, Welspun USA has warehouse and

distribution facilities for its home textiles in Ohio.  (*Id.* at ¶ 11.)  Accordingly, to the extent that

any witnesses and documents relevant to this litigation are located in the United States, they are

equally likely to be located in Ohio or New York.  (*Id.*)

### B.   Eke, Its Sale of HYDROCOTTON Products to Massachusetts Consumers, and Its Website

Without Welspun's authorization or approval, Eke has been offering and selling bath towels under the HYDROCOTTON mark.  Eke's Motion concedes such "private label" sales, touting that one out of five Turkish bath towels sold in the U.S. is from Eke.  (Creed Decl., ¶ 17.) However, Eke claims that it does not "target Massachusetts" with its sales or ship products to Massachusetts.  Eke fails to mention that the products it markets, sells, and distributes bearing the HYDROCOTTON mark are widely available for sale and/or pick-up in Massachusetts stores and via online retailers that ship to Massachusetts consumers.  Specifically, a number of national retailers, including Pottery Barn, Nordstrom, Nordstrom Rack, Land's End (sold inside Sears), and Bloomingdales each sell large quantities of HYDROCOTTON-branded products online and in brick-and-mortar stores to Massachusetts consumers. (*Id.* at ¶¶ 3-15.)

A visit to these stores by Welspun's investigator, Ms. Kristin Creed, revealed that hundreds, if not thousands, of HYDROCOTTON-branded products are currently being offered for sale on the shelves of Massachusetts retailers:

**<u>Pottery Barn in Lynnfield</u>**



### Bloomingdales in Chestnut Hill

 

### Nordstrom in Peabody

 

### Nordstrom Rack in Danvers

 

(*Id.* at ¶¶ 4-6, 8, 10-13.)  When Ms. Creed inquired with sales representatives at these stores about the purchase of additional towels, she was repeatedly reassured that the stores "always carry HYDROCOTTON towels" and that "the inventory of HYDROCOTTON towels is set to 'replenish' in all of the stores when the stock is low so that they are 'always in stock.'"  (*Id.* at ¶¶ 4, 8, 10.)  Ms. Creed purchased three of the towels at a Pottery Barn location in Massachusetts.  (*Id.* at ¶ 10.).

The Land's End, located inside the Sears at the Northshore Mall, did not carry the HYDROCOTTON-branded products in-store, but allowed Ms. Creed to purchase dozens of towels for delivery to her home, located in Massachusetts.  (*Id.* at ¶ 14.)  Ms. Creed purchased one towel.  (*Id.*)

These in-store sales do not even account for the HYDROCOTTON products available on these companies' and other retailers' websites in mass quantities, including Land's End, Bloomingdales, Nordstrom, Pottery Barn, PB Teen, Williams Sonoma, Nordstrom Rack, and Restoration Hardware.  (*Id.* at ¶ 15.)  Some of the HYDROCOTTON products are available for in-store pick-up in Massachusetts, while others can be delivered to consumers' homes in Massachusetts.  (*Id.* at ¶¶ 12, 15.)  Ms. Creed purchased one towel online from Bloomingdales and was able to pick it up the next day at the Chestnut Hill store.  (*Id.* at ¶¶ 12-13.)

In addition to the promotion and sale of these products, Eke has two websites (1) (http://www.eke.com.tr/) containing HYDROCOTTON product information and a contact page providing website visitors with contact information, and (2) an interactive internet store (http://ekehome.com) that appears to sell HYDROCOTTON-branded products to consumers in Turkey and contains a number of interactive features, social media links, and contact information.  (Creed Decl., ¶ 17.).  Both websites are accessible to consumers in Massachusetts.

7

III.    **ARGUMENT**

A.      **Welspun Has Made a *Prima Facie* Showing of Specific Personal Jurisdiction**

When a court's personal jurisdiction is contested under Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of proving that jurisdiction lies in the forum state." *Sawtelle v. Farrell*, 70 F.3d 1381, 1387 (1st Cir. 1995).  The district court "may choose from among several methods for determining whether the plaintiff has met [its] burden."  *Adelson v. Hananel*, 510 F.3d 43, 48 (1st Cir. 2007) (internal quotation omitted).  The parties agree that the *prima facie* standard applies here, which permits the district court to consider only "the facts alleged in the pleadings and the parties' supplemental filings, including affidavits."  *Edvisors Network, Inc. v. Educational Advisors, Inc.*, 755 F. Supp. 2d 272, 276 (D. Mass. 2010).

To establish personal jurisdiction, a plaintiff must demonstrate that the Massachusetts long-arm statute (Mass. Gen. Laws ch. 223A, § 3) grants jurisdiction over the defendant and that the exercise of that jurisdiction comports with the Due Process Clause of the Fourteenth Amendment.  *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 65 (1st Cir. 2014) (*citing Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 204 (1st Cir. 1994)).  Recent Massachusetts case law suggests that Massachusetts' long-arm statute might impose more restrictive limits on the exercise of personal jurisdiction than does the Constitution.  *Copia Communications, LLC v. AMResorts, L.P.*, 812 F.3d 1, 4 (1st Cir. 2016).  Eke's Motion notes that Welspun must comply with both the Massachusetts long-arm statute and the Due Process clause, but includes arguments only relating to the Due Process Clause.  (Motion, pp. 8-9.) Where a defendant does not separately raise arguments regarding compliance with Massachusetts' long-arm statute in its opening motion, it has waived any such argument that the

statute does not reach as far as the Due Process Clause.  *Id.*; *C.W. Downer & Co.*, 771 F.3d at 65.[2]

A Court may exercise general or specific jurisdiction over an out-of-state defendant only if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Copia*, 812 F.3d at 4 (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).  Welspun claims only specific personal jurisdiction in this case.  To establish specific personal jurisdiction, Welspun must show that each of the following conditions is met:

> (1) the claim underlying the litigation "directly arise out of, or relate to, the defendant's forum-state activities;"
>
> (2) defendant's contacts with the forum "represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the defendant's involuntary presence before the state's courts foreseeable," and
>
> (3) the exercise of personal jurisdiction is reasonable in light of the "Gestalt factors."

*Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 27 (1st Cir. 2008).

For the reasons discussed below, Welspun has sufficiently pled personal jurisdiction over Eke in this forum because: (1) Welspun's claims relate to or arise out of Eke's contacts with the forum; (2) Eke purposefully and voluntarily directed its activities towards this forum; and (3) the exercise of personal jurisdiction is reasonable in light of the Gestalt factors.

### 1.    Relatedness

To satisfy the relatedness requirement, there must be "a demonstrable nexus between [plaintiff's] claims and [the defendant's] forum-based activities, such . . . [that] the litigation

---

[2]  For the avoidance of doubt, Mass. Gen. Laws ch. 223A, § 3(a) and (c) subject Eke to jurisdiction under the Massachusetts long-arm statute for the same reasons discussed relative to Welspun's Due Process arguments.

9

itself is founded directly on those activities. *C.W. Downer & Co.*, 771 F.3d at 66 (quotation omitted). The test is a "flexible, relaxed standard." *Id.*

In trademark cases, relatedness is found when national retailers sell defendant's products bearing the infringing mark at issue to Massachusetts consumers. Two recent cases are instructive. In *Rimowa Distribution Inc. v. Travelers Club Luggage Inc.*, No. 15-10330-RGS, 2015 WL 3454724 (D. Mass. May 29, 2015), defendant TCL was a wholesale manufacturer of luggage. *Id.* at *1. TCL marketed its luggage through prominent national retailers, including Amazon, Target, Bed Bath & Beyond, and Sears and also maintained a website showcasing its product lines. TCL did not have offices, warehouses, or employees in Massachusetts nor did it directly sell products to Massachusetts customers. The court found relatedness based on sales through the nationwide retailers' brick-and-mortar stores, noting that "[a]s this is a trademark dispute, the fact that the goods in question were physically offered for sale in Massachusetts satisfies the relatedness prong of the specific jurisdiction inquiry." *Id.* at *3.

Similarly, in *Hilsinger Co. v. FBW Investments, LLC*, 109 F. Supp. 3d 409 (D. Mass. 2015), defendant Kleen Concept's operations were based entirely in Arizona and it had not shipped the infringing products to stores or distribution centers in Massachusetts. *Id.* at 415. Kleen Concept's only contacts to Massachusetts were (1) sales of its infringing products by nationwide retailers Walmart, Sears, K-Mart, and others (*id.* at 419); and (2) operation of the website http://www.shieldmeproducts.com that contained information about defendant's products, although it was not possible to buy products directly on the site. *Id.* at 420. The court found that the combination of these contacts were sufficient to establish relatedness. *Id.* at 421.

Eke claims that there is no relatedness because it has never sold HYDROCOTTON-branded products to Massachusetts or taken steps to ensure marketing, distribution, or sales in

Massachusetts.  (Motion, pp. 11-12.)  To support this position, Eke cites two non-trademark cases with unrelated facts—*Horizon Comics* (copyright infringement claim against movie studios and producers) and *Harlow* (hospital negligence action).

Eke's position ignores the key takeaway from *Rimowa* and *Hilsinger*, namely that trademark infringement claims are premised on a likelihood of customer confusion.  And that confusion between the HYGROCOTTON and HYDROCOTTON marks occurs *in Massachusetts* at the physical stores and websites where consumers see the parties' marks and products.  The Pottery Barn, Nordstrom, Nordstrom Rack, Land's End (sold inside Sears), and Bloomingdales stores in Massachusetts and their respective websites selling HYDROCOTTON products are the locations of potential confusion and the locations where Welspun will be harmed by such confusion.  Given the similarity between the parties' marks, there is a high likelihood that Massachusetts consumers familiar with Welspun's HYGROCOTTON products (from having purchased them at the Massachusetts locations of Bed Bath & Beyond, Costco, Home Depot, Macy's, and Walmart) would be confused by Eke's HYDROCOTTON products sold in Massachusetts through similar retail outlets.  The relatedness element is satisfied here.

## 2.    Purposeful Availment

Eke's sales of HYDROCOTTON products to national retailers (either directly or through an intermediary) also fulfills the purposeful availment prong of the jurisdictional inquiry.  The purposeful availment analysis "'focuses on the defendant's intentionality. This prong is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on those contacts.'"  *Edvisors*, 755 F. Supp. 2d at 282 (internal quotations omitted).

Sales directly to Massachusetts consumers or shipments directly to Massachusetts locations are not required for a finding of purposeful availment. *See Hilsinger*, 109 F. Supp. at 422. Here, Eke sold its HYDROCOTTON towels to distributors or national retailers knowing that the products will and do travel in the stream-of-commerce to nationwide locales, including Massachusetts. Significantly, the defendants' activities in the *Rodriguez v. Fullerton Tires* (product liability) and *Horizon Comics* (copyright) cases cited in Eke's Motion stopped here. (Motion, pp. 13-14.) Eke's actions go further. Massachusetts courts have found that placing products in the stream of commerce, combined with the following points, is sufficient to establish that Eke purposefully availed itself of this forum:

- Eke is a manufacturer selling finished products to national retailers, such as Pottery Barn, Nordstrom, Nordstrom Rack, Land's End (sold inside Sears), and Bloomingdales with hundreds, if not thousands, of these products being sold to consumers in Massachusetts; and

- Eke operates a website that may be viewed anywhere in the U.S. and contains at least some interactive features.

*See Rimowa*, 2015 WL 3454724 ("Here it is beyond cavil that the sale of TCL's luggage in Massachusetts was purposeful both in the sense of being foreseeable, and more significantly, being fully intended by TCL. See Decl. of Peter Yu ¶ 8 (acknowledging that TCL's website directs viewers to national retailers.").

First, Eke's sales of HYDROCOTTON products to national retailers and the resulting volume of products in Massachusetts indicates that it purposefully availed itself of this forum. The *Hilsinger* case is instructive:

> **Kleen Concepts is a manufacturer that sells finished products to national retailers such as Walmart, Sears, and Amazon.com. An unknown number—likely thousands—of products were sold by those retailers to consumers in Massachusetts in 2014 alone**. . . . Kleen Concepts has acknowledged an intent to develop a national market for its SHIELDME brand. It has sold to national retailers. Other courts have

12

found that sales to national retailers reveal a specific intent to target those states in which the national retailers do business.[3]

Likewise, the "intent and purpose" of Kleen Concepts are "completely revealed in its decision to sell through national retail chains." *See Estes,* 24 F.Supp.2d at 630; *see also Kernius,* 433 F.Supp.2d at 627 ("A corporation cannot sell its products to national retailers such as RadioShack, Best Buy, Target, and Wal–Mart and then claim that it is surprised to be haled into court in a particular State because, to the best of the corporation's knowledge, it was not specifically aware that its products were actually sold or used in that State."). **For example, Kleen Concepts "intentionally sells the allegedly infringing [products] to Wal–Mart knowing that it has stores throughout the nation."** *Fallon Luminous Prods.,* 343 F.Supp.2d at 507 ("By selling the neon signs to Wal–Mart, a likely destination of the neon signs is one of the eighteen Wal–Mart discount stores or forty-two Wal–Mart supercenters in South Carolina."). **It has not instructed Walmart or any other national retailer not to sell in Massachusetts, and it acknowledges that it wants a nationwide presence. Therefore, Kleen Concepts intends for its product to be sold wherever Walmart and Sears have stores and wherever Amazon.com sells to consumers—including Massachusetts.**

*Hilsinger*, 109 F. Supp. at 426-28 (emphasis added).

Like *Hilsinger*, Eke's products bearing the HYDROCOTTON mark are marketed and sold online and in the national retailers' brick-and-mortar stores for Pottery Barn, Nordstrom, Nordstrom Rack, Land's End (sold inside Sears), and Bloomingdales, including numerous stores

---

[3] "*See, e.g.*, *Frito–Lay North America, Inc. v. Medallion Foods, Inc.,* 867 F.Supp.2d 859 (E.D. Tex. 2012) (finding that personal jurisdiction is proper in patent infringement action where manufacturer fulfils purchase orders for Walmart); *Furminator, Inc. v. Wahba,* 2011 WL 3847390 (E.D. Mo. Aug. 29, 2011) (finding personal jurisdiction over defendant in Eastern District of Missouri because plaintiff made *prima facie* showing that defendants "knew that the products in question that they sold on eBay.com or Amazon.com were available to Missouri residents, were in fact sold to at least one Missouri resident (Plaintiff), and more importantly were counterfeit, infringing on a Missouri company's trademark"); *Kernius v. International Electronics,* 433 F. Supp. 2d 621 (D. Md. 2006) (finding personal jurisdiction over defendant proper where defendant sells devices "in thousands of quality and trusted stores and catalogs across the USA and other countries, including: RadioShack, Best Buy, Target, [and] Wal–Mart"); *Fallon Luminous Prods. Corp. v. Multi Media Elecs., Inc.,* 343 F. Supp. 2d 502, 507 (D.S.C. 2004) ( "[Manufacturer] has purposefully directed its activities at South Carolina because it sold the allegedly infringing neon signs to Wal–Mart, which distributes products through an established nationwide distribution channel.")."

in Massachusetts.  Eke offers no indication that it placed restrictions on where these retailers

could sell its HYDROCOTTON goods.  Indeed, Eke's website showing where it exports its

products highlights the <u>entire United States</u>:



(Creed Decl., ¶ 17.).  Such widespread marketing, sale, and distribution of products bearing the

HYDROCOTTON mark evidences Eke's efforts to conduct business throughout the United

States, including with residents of Massachusetts.  Significantly, Eke states on its website that its

"main market is USA," which "consists [of] 80% of the total export."  (*Id.*)

Finally, Eke operates two semi-interactive websites for its HYDROCOTTON products

(http://www.eke.com.tr/ and http://ekehome.com).  While HYDROCOTTON products do not

appear to be available for ordering on these websites, the sites contain information about

HYDROCOTTON products, provide links to Twitter and Facebook pages, and offer interactive

contact features for consumers to exchange information with Eke.  (Creed Decl., ¶ 17.)  When

combined with the sales through national retailers, these websites support a finding of personal

jurisdiction.  *See Hilsinger*, 109 F. Supp. at 429.

In sum, the fact that Eke clearly targets its business to the whole of the United States and

that eighty percent of its exports are to the U.S., the widespread availability of products bearing

the HYDROCOTTON mark in Massachusetts, via brick-and-mortar and online retailers, in

14

conjunction with an interactive website enabling users to contact Eke and exchange information

with Eke, and the fact that Welspun  has suffered and continues to suffer harm in Massachusetts,

supports a finding that Welspun has met the purposeful availment prong.

### 3.   Reasonableness

Courts look to five "Gestalt factors" to determine whether the exercise of personal

jurisdiction is reasonable:

(1) the defendant's burden of appearing;

(2) Massachusetts' interest in adjudicating the dispute;

(3) the plaintiff's interest in obtaining convenient and effective relief;

(4) the judicial system's interest in obtaining the most effective resolution of the
controversy; and

(5) the common interests of all sovereigns in promoting substantive social policies.

*See Adelson v. Hananel*, 510 F.3d at 51.  Where the purposeful availment standard is met, "[t]he

gestalt factors rarely seem to preclude jurisdiction."  *Cambridge Literary Properties, Ltd. v. W.*

*Goebel Porzellanfabrik G.m.b.H. & Co. Kg.*, 295 F.3d 59, 66 (1st Cir. 2002).

The most important of the Gestalt factors is the first.  *Art Tech. Group, Inc. v. Puritan's*

*Pride, Inc.*, 716 F. Supp. 2d 93, 104 (D. Mass. 2010).  "Defending an action in a foreign

jurisdiction 'is almost always inconvenient and/or costly . . . this factor is only meaningful where

a party can demonstrate some kind of special or unusual burden.'"  *Id.* (internal quotations

omitted) (finding no special burden with requiring New York corporation to litigate case in

Massachusetts, not New York)  The facts here do not suggest that litigating this suit in

Massachusetts would be especially or unusually onerous for Eke.

Eke argues that it is a non-Massachusetts company with no contacts in Massachusetts and

that its witnesses are located outside of Massachusetts.  As discussed above, Eke has substantial

contacts with Massachusetts by way of its products being sold here.  Furthermore, Eke is

prepared to litigate this case in the Southern District of New York and provides no indication

why Massachusetts would impose a different "special burden."  *See Cambridge Literary*

*Properties*, 295 F.3d at 66 ("And while Germany would surely be more convenient for

defendants, litigation in Massachusetts cannot be impossibly burdensome for defendants who, by

their own admission to the district court, are prepared to defend in New Jersey where Goebel

Art's North American subsidiary is based.").  In addition, having to transport party or non-party

witnesses does not amount to a "special or unusual burden," beyond the "ordinary

inconveniences of litigating an action in another state." *Blu Homes, Inc. v. Kaufmann*, No. 10-

cv-11418-DJC, 2011 WL 3290362, at *5-6 (D. Mass. July 29, 2011); *see also Art Tech. Group*,

716 F. Supp. 2d at 104 (no special burden requiring witnesses living in New York to travel to

Massachusetts; witnesses may appear by deposition if necessary); *Rimowa Distribution*, 2015

WL 3454724, at *3 ("In that TCL conducts business on an international scale, TCL's concern [of

witnesses traveling to Massachusetts] bears little weight-the Supreme Court has long recognized

that parties transacting business on a national or international scale are expected to defend

themselves in a foreign locus as an ordinary incident of doing business.").  Particularly when

considering that 80% of Eke's exports are to the United States, being hailed into court anywhere

in the United States should come as no surprise.  Eke has made no showing that Massachusetts

imposes a special burden.

    With regard to the second factor, "[t]he purpose of this inquiry is not to *compare* the

forum's interest to that of some other jurisdiction, but to determine the extent to which the forum

*has* an interest." *Sawtelle*, 70 F.3d at 1395 (internal quotation omitted).  Here, "Massachusetts

has an interest in preventing trademark infringement against those subject to the protections and

16

requirements of its laws." *Edvisors*, 755 F. Supp. 2d at 285 (internal quotation omitted).  This

Court's interest includes protecting Welspun and Massachusetts' consumers who may be

confused by the infringing HYDROCOTTON products.

That Welspun is not based in Massachusetts does not preclude a finding in its favor on

the third factor.  As the First Circuit has made clear, "a plaintiff's choice of forum must be

accorded a degree of deference with respect to the issue of its own convenience." *Sawtelle*, 70

F.3d at 1395.  Welspun's key documents and witnesses on use of the HYGROCOTTON mark

and sales, marketing, and importation of HYGROCOTTON-branded products are in India.

(Chauhan Decl., ¶ 10.)  Without litigating this case in India, Massachusetts is as convenient a

forum as any other for collection and production of relevant documents and for travel of its

witnesses.

The fourth factor also favors Welspun.  If this Court were to dismiss the case, "it is likely

the parties would still need judicial resolution of their dispute – given that the alleged

[trademark] infringement is ongoing." *Morphotrust USA, LLC v. Identrix, LLC*, No. 16-cv-

10074, 2016 WL 3512131, at *9 (D. Mass. Jun. 21, 2016).  As such, [t]he most efficient path for

the judicial system, then, is to move forward with the lawsuit in the present forum." *See Hasbro*,

*Inc. v. Clue Computing, Inc.*, 994 F. Supp. 34, 46 (D. Mass. 1997).

Finally, the fifth factor favors litigating this dispute in Massachusetts because

"[r]equiring alleged [trademark] infringers . . . to bear the burden of traveling to a forum in

which their voluntary actions have caused foreseeable injury encourages them to consider this

burden before they act." *Berklee Coll. of Music, Inc. v. Music Indus. Educators, Inc.*, 733 F.

Supp. 2d 204, 211 (D. Mass. 2010).

In sum, the five Gestalt factors all weigh in Welspun's favor.  Under this analysis, the maintenance of the suit in Massachusetts is reasonable.

**B.      Venue is Proper in this Court**

**1.      Eke's Motion to Dismiss under Fed. R. Civ. P. 12(b)(3) Must Be Denied**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(3) evaluates whether the case falls within one of three categories cited in 28 U.S.C. § 1391.  Venue may be proper in more than one district.  *See Astro-Med, Inc. v. Nihon Kohden America, Inc.*, 591 F.3d 1, 12 (1st Cir. 2009).  The court need only determine whether venue is proper in Massachusetts, not whether Massachusetts is the best venue.  *Id.*  For the reasons discussed below, Welspun's and Eke's fall within the second and third factors:

> (2)      a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3)      if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391.

In federal trademark infringement cases, courts routinely find venue to be proper under 28 U.S.C. § 1391(b)(2) where the infringement is alleged to have occurred and where confusion of the purchasers is likely to result.  *See, e.g.*, *Goya Foods Inc. v. Oy*, 959 F. Supp. 2d 206, 217 (D.P.R. 2013); *Gary Scott Int'l, Inc. v. Baroudi*, 981 F. Supp. 714, 717-18 (D. Mass. 1997).  To determine where confusion is likely, "courts have focused on the absence or presence of advertising and sales in the district."  *Gary Scott*, 981 F. Supp. at 718.  As already discussed, the promotion and sales of hundreds, if not thousands, of Eke's HYDROCOTTON towels at Massachusetts retail locations make clear that Eke's infringement of the HYGROCOTTON mark

occurs in Massachusetts and is likely to confuse Massachusetts' consumers.  As a result, venue is proper in the present case under 28 U.S.C. § 1391(b)(2).

Even if 28 U.S.C. § 1391(b)(2) is inapplicable, venue is appropriate under 28 U.S.C. § 1391(c) where a defendant corporation is subject to personal jurisdiction at the time the action is commenced.  *Astro-Med, Inc.*, 591 F.3d 11, n.6  As Eke is a corporation subject to personal jurisdiction in Massachusetts (*see supra* Section III.A.), venue is appropriate in Massachusetts pursuant to 28 U.S.C. § 1391(c).

### C.      Eke's Motion to Transfer Must Be Denied

Eke asks, in the alternative, that this case be transferred under 28 U.S.C. § 1404(a) to the U.S. District Court for the Southern District of New York.  Section 1404(a) of Title 28 of the United States Code provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  A transfer of venue is at the discretion of the district court, *Codex Corp. v. Milgo Elec. Corp.,* 553 F.2d 735, 737 (1st Cir. 1977), *cert. denied,* 434 U.S. 860 (1977), and the high burden of proof for the transfer lies with Eke.  *Nowak,* 94 F.3d at 719.  The Court's discretion should be guided by the balancing of numerous factors, while bearing in mind that Welspun's choice of forum is entitled to "great weight."  *Brookfield Mach., Inc.*, 929 F. Supp. at 501 (quoting *Home Owners Funding Corp. of America*, 695 F. Supp. at 1347).  These factors include the convenience of the parties and witnesses, the availability of documents, the possibility of consolidation and the interests of justice.  *Codex,* 553 F.2d at 737.

Eke fails to meet the heavy burden required to deprive Welspun of its choice of venue.  Eke notes that both Welspun USA and Eke's subsidiary, Eke USA, are located in the Southern District of New York.  However, Welspun's business is based in India and key decisions on use of the HYGROCOTTON mark and sales, marketing, and importation of HYGROCOTTON-

branded products are all made in India.  (Chauhan Decl., ¶¶ 2, 10.)  As such, the majority of witnesses and documents relevant for this litigation are located in India.  (*Id*.)  Moreover, to the extent that Welspun has relevant documents and/or witnesses in the U.S., these documents and witnesses are just as likely to be in Ohio as New York, given that Welspun has warehouse and distribution facilities for its home textiles in Ohio.  (*Id.* at ¶ 11.)  There will be no increased convenience for Welspun by transferring this case in New York.

Regarding Eke's convenience, Eke is based in Turkey, the HYDROCOTTON mark was conceived in Turkey, the HYDROCOTTON products are manufactured and branded with the HYDROCOTTON mark in Turkey, and the HYDROCOTTON products are shipped from Turkey.  (Caglar Declaration (Dkt. No. 20), ¶¶ 3, 7, 8, 10, 11.).  These key facts will be a core part of Welspun's discovery efforts and the difference in collecting documents between and/or travel from Turkey to Boston or Turkey to New York is immaterial in terms of convenience.  Eke repeatedly notes that New York is more convenient due to the location of several non-parties, Eke USA, Veritas, and Icon Holdings.  (Motion, p. 19.)  Eke fails, however, to describe with any specificity the discovery that would be required from these companies.  To the extent required, document collection and depositions can be done in New York.

The possibility of consolidation is not relevant in this case, as the district court action will substantively decide the parties' pending cancellation actions before the U.S. Patent and Trademark Office.  Further, the interests of justice do not weigh heavily towards either forum.

The weight of these factors is, *at best*, equally balanced between Massachusetts and New York.  Eke has failed to meet its burden of making a strong showing that its choice of forum is superior.  *See Hasbro, Inc.*, 994 F. Supp. at 46-47.  Therefore, transfer of venue is unnecessary and Eke's motion should be denied.

## IV.    CONCLUSION

For the reasons and authorities above, Welspun respectfully requests that the Court deny Eke's motions to dismiss and Eke's request to transfer venue to the Southern District of New York.

Dated:  March 8, 2017                    Respectfully submitted,


                                         */s/ Laura K. Johnson*
                                         Laura K. Johnson (BBO#681819)
                                         Christopher S. Schultz (BBO# 630814)
                                         FINNEGAN, HENDERSON, FARABOW,
                                             GARRETT & DUNNER
                                         2 Seaport Lane
                                         6th Floor
                                         Boston, MA 02210-2001
                                         Telephone: (617) 646-1600
                                         Facsimile: (617) 646-1666
                                         christopher.schultz@finnegan.com

                                         Naresh Kilaru (BBO# 654590)
                                         Raj Gupta
                                         FINNEGAN, HENDERSON, FARABOW,
                                             GARRETT & DUNNER
                                         901 New York Avenue, NW
                                         Washington DC 20001
                                         Telephone: (202) 408-4000

                                         Attorneys for Plaintiffs
                                         Welspun USA, Inc., Welspun India Limited and
                                         Welspun Global Brands Limited

### CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as nonregistered participants on March 8, 2017.

/s/ Laura K. Johnson
Laura K. Johnson (BBO# 681819)
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER
2 Seaport Lane
6th Floor
Boston, MA 02210-2001
Telephone: (617) 646-1600
Facsimile: (617) 646-1666
christopher.schultz@finnegan.com

Attorney for Plaintiffs
Welspun USA, Inc., Welspun India Limited and Welspun Global Brands Limited