UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ———————————————— ) | |
| WELSPUN USA, INC., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 16-cv-12040-LTS |
| ) | |
| EKE TEKSTIL KONFEKSIYON ) | |
| TURIZM SANAYI VE TICARET A.S., ) | |
| ) | |
| Defendant. ) | |
| ———————————————— ) | |

ORDER ON MOTION TO DISMISS (DOC. 19)

July 18, 2017

SOROKIN, D.J.

Defendant Eke Tekstil Konfeksiyon Turizm Sanayi Ve Ticaret A.S., a Turkish

corporation, has moved to dismiss this case for lack of personal jurisdiction.[1]  Doc. 19; Doc. 20

at 2.  For the reasons that follow, the Court ALLOWS the Motion.


I.      BACKGROUND

On February 22, 2017, Plaintiffs Welspun USA, Inc. ("Welspun USA"), Welspun Global

Brands Limited ("WGBL"), and Welspun India Limited ("WIL") (collectively, "Welspun") filed

this action against Defendant for "willful" trademark infringement and engagement in unfair

competition.  Doc. 1.  Welspun, a "manufacturer and supplier of home textiles, . . . has

continuously used the trademark HYGROCOTTON in connection with bed sheets and towels."

---

[1] Defendant also moves to dismiss for improper venue.  Doc. 19.  Because the Court finds it lacks jurisdiction, it need not address the venue argument.  On April 3, 2017, Plaintiffs filed a motion for leave to file a sur-reply (Doc. 30), which the Court ALLOWS.

Id. at 3.  WIL owns a U.S. registered trademark for HYGROCOTTON, "which issued on August 9, 2005 and has a priority date of November 13, 2003." Id.  According to Plaintiffs, "[s]ubsequent to the November 13, 2003 filing date . . . , Defendant or its predecessor in interest began using the mark HYDROCOTTON for products identical or closely related to those sold under Welspun's HYGROCOTTON brand in the United States." Id. at 4.  Plaintiffs claim Defendant's mark infringes upon their mark and is deceptive, in violation of the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a); Massachusetts common law; and Mass. Gen. Laws ch. 93A ("Chapter 93A").  Id. at 6-8.


II.    RELEVANT JURISDICTIONAL FACTS[2]

Defendant is incorporated and resides in Turkey.  Doc. 20-1 at 1.  It is affiliated with non-defendant Eke USA, Inc. ("Eke USA"), "a New Jersey corporation authorized to do business in New York." Id.  Defendant "has not leased or owned properties in Massachusetts; maintained offices in Massachusetts; kept a telephone listing or files in Massachusetts; had employees or agents based in Massachusetts; advertised in Massachusetts; registered to do business in Massachusetts; had a bank account in Massachusetts; or been required to file Massachusetts state taxes." Id. at 2.  Defendant "has no investors in Massachusetts, and does not maintain an agent for service of process in Massachusetts." Id.  Defendant maintains a website that "does not target Massachusetts customers" and that does not allow customers "the ability to purchase goods." Id.  Rather, "[t]he website simply provides general information – including a catalogue, an overview of the company, and contact information." Id.  Defendant "does all of its

---

[2] In this section, the Court recites facts from Plaintiff's "properly documented evidentiary proffers and from those portions of the defendants' proffers that are undisputed." Copia Communications, LLC v. AMResorts, L.P., 812 F.3d 1, 3 (1st Cir. 2016) (citation omitted).

manufacturing in Turkey" and, since 2014, another Turkish company, Veritas, has "ship[ped] HYDROCOTTON-branded products to third parties in the United States." Id.  Defendant "has displayed HYDROCOTTON-branded products at a showroom in Manhattan." Id.  Neither Defendant nor Eke USA sells or ships Hydrocotton-branded products into Massachusetts.  Id.  Neither Defendant nor Veritas has ever shipped Hydrocotton-branded products to Massachusetts. Id.  Since 2014, Veritas has shipped Hydrocotton-branded products manufactured by Defendant to "only a handful of states, including New York." Id. at 2-3.  Prior to 2014, Defendant shipped Hydrocotton-branded products to the United States, but never shipped to Massachusetts.  Id. According to the Executive Director of Eke USA, Defendant "has taken no affirmative steps to ensure that its goods are marketed, sold, and/or distributed in Massachusetts." Id. at 3.

Defendant's Hydrocotton towels are sold at various stores in Massachusetts, including Nordstrom Rack, Nordstrom, Pottery Barn, and Bloomingdales.  Doc. 24-2 at 1-9.  The towels are also featured on various retailers' websites, which "offer[] Hydrocotton products for purchase and shipment into Massachusetts." Id. at 10.  In addition, Defendant "has two websites (1) (http://www.eke.com.tr/) containing HYDROCOTTON product information and a contact page providing website visitors with contact information, and (2) an interactive internet store (http://ekehome.com) that appears to sell HYDROCOTTON-branded products to consumers in Turkey as the site appears in Turkish and contains a number of interactive features, social media links, and contact information." Doc. 24 at 11 (citation omitted).  These websites are of course accessible to anyone with internet access, including "consumers in Massachusetts."[3] Id. Defendant's website also displays a map of the entire world with many countries highlighted,

---

[3] Plaintiff concedes that one of these two websites in English (www.eke.com.tr) while the other is in Turkish,  Doc. 30-1 at 6, and Defendant's submission confirms Plaintiff's assertion.  Doc. 27-1 at 8-11.

including the United States, and this page states that Defendant "exports" its products to the highlighted regions.  Doc. 24-18 at 16.

Finally, in an April 2017 Pottery Barn catalog sent to people in Massachusetts, two pages of the catalog promote the sale of Hydrocotton towels.  Doc. 30-1 at 9.  Thus, "[p]romotional materials containing the HYDROCOTTON mark are now being delivered directly to the doors of Massachusetts consumers."  Id. at 3.


III.   RELEVANT LAW

"The plaintiff has the burden of establishing that jurisdiction over the defendant lies in the forum state."  Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016) (citation omitted).  "Faced with a motion to dismiss for lack of personal jurisdiction, a district court may choose from among several methods for determining whether the plaintiff has met its burden," the "most common[]" being the prima facie method.  Id. (citations, internal quotation marks, and alterations omitted); A Corp. v. All American Plumbing, 812 F.3d 54, 58 n.5 (1st Cir. 2016) (citation and internal quotation marks omitted).  Under that method, the plaintiff must "proffer evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction."  Baskin-Robbins, 825 F.3d at 34 (citations omitted).  "It is not enough for [a plaintiff] to rely on unsupported allegations in its pleadings."  A Corp., 812 F.3d at 58 (citations and internal quotation marks omitted).  "Rather, [the plaintiff] must put forward evidence of specific facts to demonstrate that jurisdiction exists."  Id. (citations and internal quotation marks omitted); see also Carreras v. PMG Collins, LLC, 660 F.3d 549, 552 (1st Cir. 2011) ("A court need not . . . credit bald allegations or unsupported conclusions.").  The Court "must accept [Plaintiffs'] properly documented evidentiary proffers as true and construe them in

the light most favorable to [their] jurisdictional claim."  <u>A Corp.</u>, 812 F.3d at 58 (citations

omitted).  The Court will "also consider facts offered by [Defendant], to the extent that they are

not disputed."  <u>Id.</u> (citation omitted).

      To establish personal jurisdiction over Defendant, Plaintiffs "must meet the requirements

of both the Massachusetts long-arm statute and the due process clause of the Fourteenth

Amendment."  <u>Id.</u> (citation omitted).[4]  "The Due Process Clause of the Fourteenth Amendment

requires that a defendant have certain minimum contacts with the forum state such that the

maintenance of the suit does not offend traditional notions of fair play and substantial justice."

<u>Baskin-Robbins</u>, 825 F.3d at 35 (citations and internal quotation marks omitted).  For the Court

to have specific jurisdiction over a defendant,[5] (1) "the claim underlying the litigation must

directly arise out of, or relate to, the defendant's forum-state activities"; (2) "the defendant's in-

state contacts must represent a purposeful availment of the privilege of conducting activities in

the forum state, thereby invoking the benefits and protections of that state's laws and making the

defendant's involuntary presence before the state's courts foreseeable"; and (3) the exercise of

jurisdiction must be "reasonable."  <u>Copia Communications</u>, 812 F.3d at 4 (citations and internal

quotation marks omitted).

      "The inquiry whether a forum State may assert specific jurisdiction over a nonresident

defendant focuses on the relationship among the defendant, the forum, and the litigation."

<u>Walden v. Fiore</u>, 134 S. Ct. 1115, 1121 (2014) (citations and internal quotation marks omitted).

"[T]he relationship must arise out of contacts that the defendant *himself* creates with the forum

State."  <u>Id.</u> at 1122 (italics in original; citation and internal quotation marks omitted).  The

---

[4] The Court finds it may not exercise personal jurisdiction under the Due Process Clause, and thus need not analyze whether it may do so under the long-arm statute.

[5] Plaintiffs only assert specific personal jurisdiction, not general personal jurisdiction.  Doc. 24 at 12.

"unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." Id. (citation and internal quotation marks omitted). "To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties." Id. at 1123. "But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." Id. (citation omitted). "[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." Id. at 1126.

In the context of intentional torts, a "forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." Id. (citation omitted). The focus is on "whether the *defendant's* actions connect him to the *forum*." Id. at 1124 (italics in original). Thus, in Walden, the Court held that the federal court in Nevada could not "exercise personal jurisdiction over a defendant on the basis that he knew his allegedly tortious conduct in Georgia would" cause harm in Nevada, because the defendant "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." Id. at 1119, 1124.

In addition, the First Circuit has repeatedly rejected the "stream of commerce" theory of personal jurisdiction, i.e., the theory that "a commercial enterprise should be subject to personal jurisdiction wherever its conduct foreseeably causes injury, regardless of whether the defendant directed its conduct toward the forum state." Sawtelle v. Farrell, 70 F.3d 1381, 1393 (1st Cir. 1995). Accordingly, in Boit v. Gar-Tec Prod., Inc., 967 F.2d 671 (1st Cir. 1992), the Court held that the federal court in Maine did not have personal jurisdiction over the manufacturer of an allegedly defective product, where (1) the manufacturer had only sold its product to a national

6

retailer, which then sold the product through the mail to the plaintiff in Maine; and (2) there was

no evidence that the manufacturer "designed the product for Maine, advertised in Maine,

established channels for providing regular advice to customers in Maine, or marketed the product

through a distributor who had agreed to serve as a sales agent in Maine." Id. at 681-82 (citing

Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 112 (1987) (plurality

opinion)).  Moreover, in Rodriguez v. Fullerton Tires Corp., 115 F.3d 81 (1st Cir. 1997), the

Court stated that even if a defendant manufacturer "had specific knowledge that the stream of

commerce would move its [product] into Puerto Rico . . . , this awareness alone would not be

enough" for the federal court in Puerto Rico to exercise personal jurisdiction over the

manufacturer in a product liability action.  Id. at 85 (citing Asahi, 480 U.S. at 112).

Like this Circuit, the Fourth Circuit has rejected the "stream of commerce" theory of

personal jurisdiction, stating that a non-resident commercial defendant "may only be subject to

personal jurisdiction . . . 'if that defendant engaged in some activity purposely directed at the

forum state.'"  AESP, Inc. v. Signamax, LLC, 29 F. Supp. 3d 683, 690 (E.D. Va. 2014) (quoting

Lesnick v. Hollingsworth & Vose Co., 35 F.3d 939, 945-46 (4th Cir. 1994)).  Applying this

doctrine, the District Court in Signamax held that it did not have personal jurisdiction over the

defendant, a Czech corporation accused of trademark infringement, where the defendant had

merely sold "allegedly infringing products from abroad to a United States distributor that, in

turn, [sold] these infringing products nationwide."  Id. at 684.  In reaching this finding, the Court

noted the absence of any evidence in the record that the defendant (1) "directed the sales of its

products to Virginia or any Virginia customers"; (2) "require[d] [the distributor] to sell the

products to Virginia customers"; (3) "specifically structured its relationship with [the distributor]

in order to facilitate the sale of the allegedly infringing products in Virginia"; or (4) "marketed" or advertised "the allegedly infringing products in Virginia." Id. at 690-91.

IV.    ANALYSIS

Plaintiffs have only demonstrated that Defendant's products are sold in Massachusetts through third parties.  See generally Doc. 24-2.  The only mention in the record of Defendant selling products directly to consumers is when Plaintiffs state that one of Defendant's websites sells products to "consumers *in Turkey*." Id. at 11 (italics added).  Plaintiffs do not dispute Defendant's claim that it has neither shipped products to Massachusetts nor taken affirmative steps to ensure that its goods are marketed or sold in Massachusetts.  See Doc. 20-1 at 2-3.  In addition, Plaintiffs do not request jurisdictional discovery either to challenge any of the foregoing facts or to gather additional facts to support their assertion of jurisdiction over Defendant. [6]

Accordingly, the jurisdiction question is ripe for decision and Plaintiffs have not shown that Defendant *itself* created any contacts with Massachusetts, rather than some third-party distributor.  See Walden, 134 S. Ct. at 1121.  They have not shown any "intentional conduct by the defendant that creates the necessary contacts with the forum." Id. at 1126.  On the contrary, as with the defendant in Walden, there is no evidence that Defendant ever "traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Massachusetts." Id. at 1124.  As with the defendant in Boit, the evidence merely shows that one or more national

---

[6] "There may well have been other facts that [Plaintiffs] could have demonstrated in support of jurisdiction." J. McIntyre Machinery, Ltd. v. Nicastro, 564 U.S. 873, 889 (2011) (Breyer, J., concurring).  "But the[y] bear[] the burden of establishing jurisdiction," and, in any event, they have not requested jurisdictional discovery. Id. at 889-90 (citations omitted).  Rather, Plaintiffs only mention discovery in the context of arguing that venue is equally convenient for Defendant in any U.S. District.  See Doc. 24 at 24.  Furthermore, they have not argued against Defendant's request for dismissal "without leave to amend."  Doc. 20 at 26; Doc. 27 at 14.

retailers sell Defendant's product;[7] there is no evidence that it designed its products for

Massachusetts, advertised in Massachusetts, established channels for providing regular advice to

customers in Massachusetts, or marketed its products through a distributor who agreed to serve

as a sales agent in Massachusetts.  967 F.2d at 681-82.  Indeed, even if Defendant knew that

national retailers would sell its products in Massachusetts, that awareness alone would be

insufficient to exercise personal jurisdiction over Defendant in this suit.  See Rodriguez, 115

F.3d at 85.  While Defendant states on its website that it exports its products to various countries,

on the record before the Court, that statement does notestablish intentional conduct aimed at

Massachusetts by the Defendant.[8]  The Court thus reaches the same conclusion that the court in

Signamax reached, under very similar facts, see 29 F. Supp. 3d at 690-91, and finds that it lacks

personal jurisdiction over Defendant.

---

[7] The First Circuit also rejected finding personal jurisdiction even if the Defendant had sold its product to the national retailer.  967 F.2d at 681-83.

[8] Plaintffs also rely heavily on Hilsinger v FBW decided by Judge Saylor. 109 F.Supp.3d 409 (D.Mass. 2015). Judge Saylor did not conclude, as Plaintiffs seem to suggest, that the national availability of a finished product automatically gives rise to sufficient contacts in any individual state to support a claim of trademark infringement against the manufacturer of the finished product.  Judge Saylor pointed to specific facts not present in this case including that the defendant sold directly to national retailers, that the plaintiff, as a Massachusetts corporation, suffered injury from the intentional tort at its home in Massachusetts, that the defendant persisted in distribution of its product in Massachusetts (via the national retailers) after first receiving a cease and desist letter from plaintiff and then accepting assignment of the accused trademarks, and finally that defendant operated a somewhat interactive website published in English.

V.      <u>CONCLUSION</u>

For the foregoing reasons, the Court ALLOWS the Motion to Dismiss (Doc. 19) and

DISMISSES this action WITHOUT PREJUDICE for lack of personal jurisdiction over

Defendant.

SO ORDERED.

  /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge